IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prentice Williams,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Tempe, City of, *et al.*,<br><br>　　　　　　Defendants. | No. CV-14-01597-PHX-JJT<br><br>**ORDER** |

At issue are Defendant Luke Trader's Motion for Summary Judgment (Doc. 174, Def.'s MSJ), to which *pro se* Plaintiff Prentice Williams filed a "Notice to the Court that Mr. Davis is at it Again," which the Court will construe as a Response (Doc. 178, Pl.'s Resp.); and Plaintiff's Motion for Summary Judgment (Doc. 177, Pl.'s MSJ), to which Defendant filed a Response (Doc. 180, Def.'s Resp.). Neither party elected to file a Reply in support of their Motions. The Court finds resolution of the parties' cross-motions for summary judgment appropriate without oral argument. *See* LRCiv 7.2(f).

**I.　　BACKGROUND**

On November 1, 2013, Defendant, a City of Tempe police officer, was travelling northbound on his motorcycle and observed Plaintiff stopped at a traffic light located at the intersection of Ash Avenue and University Drive. Plaintiff made a left turn onto University Drive, heading westbound, and Defendant followed. Though the parties differ as to the degree, as well as the presence of any obstructions or bike lanes at the time, they agree that Plaintiff failed to immediately and completely turn into the left-most lane on

| | |
|---|---|
| 1 | University Drive. Plaintiff alleges that he continued on University Drive before turning |
| 2 | into the "Thai Basil strip mall"—a parking lot located at 815 West University Drive—on |
| 3 | his own volition. Defendant, however, contends that he initiated a traffic stop that spurred |
| 4 | Plaintiff's actions. The parties also present conflicting testimony regarding whether |
| 5 | Plaintiff exited his vehicle or remained in the driver's seat in the strip mall parking lot, |
| 6 | but agree that Defendant first interfaced with Plaintiff in that parking lot, questioning |
| 7 | Plaintiff regarding his prior whereabouts and requesting his motor vehicle registration. |
| 8 | Defendant then issued Plaintiff two citations—for an improper left hand turn under |
| 9 | A.R.S. § 28-751, and for failure to carry proof of registration pursuant to A.R.S. § 28- |
| 10 | 2158. On January 3, 2014, Plaintiff appeared in traffic court to address those citations. |
| 11 | Defendant did not appear and the citations were dismissed, though a courthouse |
| 12 | employee provided Plaintiff with two outstanding citations that were issued in 2006 and |
| 13 | 2011. |
| 14 |       Plaintiff then filed his Complaint (Doc. 1) on July 15, 2014, which eventually |
| 15 | included claims for racial profiling, conspiracy, false imprisonment, improper seizure, |
| 16 | and harassment. (*See* Doc. 56.) The Court dismissed all of Plaintiff's claims, including |
| 17 | Plaintiff's attempts to supplement his Complaint, except Plaintiff's count alleging a |
| 18 | Fourth Amendment violation. (*See* Docs. 51, 80, 82.) |
| 19 | **II.**    **LEGAL STANDARD** |
| 20 |       Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is |
| 21 | appropriate when: (1) the movant shows that there is no genuine dispute as to any |
| 22 | material fact; and (2) after viewing the evidence most favorably to the non-moving party, |
| 23 | the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.* |
| 24 | *Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, |
| 25 | 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect |
| 26 | the outcome of the suit under governing [substantive] law will properly preclude the |
| 27 | entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). |
| 28 | |

1  A "genuine issue" of material fact arises only "if the evidence is such that a reasonable
2  jury could return a verdict for the nonmoving party." *Id.*

3  In considering a motion for summary judgment, the court must regard as true the
4  non-moving party's evidence, if it is supported by affidavits or other evidentiary material.
5  *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party
6  may not merely rest on its pleadings; it must produce some significant probative evidence
7  tending to contradict the moving party's allegations, thereby creating a material question
8  of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative
9  evidence in order to defeat a properly supported motion for summary judgment); *First
10 Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

11 "A summary judgment motion cannot be defeated by relying solely on conclusory
12 allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.
13 1989). "Summary judgment must be entered 'against a party who fails to make a showing
14 sufficient to establish the existence of an element essential to that party's case, and on
15 which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d
16 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

17 While the Court must construe the pleadings liberally, "*[p]ro se* litigants must
18 follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d
19 565, 567 (9th Cir. 1987). Regardless of his *pro se* status, at summary judgment, the
20 elements Plaintiff must prove and Plaintiff's burden of proof are not relaxed simply
21 because he is appearing without the assistance of counsel. *Jacobsen v. Filler*, 790 F.2d
22 1362, 1364 (9th Cir. 1986); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.
23 2010) ("an ordinary *pro se* litigant, like other litigants, must comply strictly with the
24 summary judgment rules" (citation omitted)).

25 . . . .
26 . . . .
27 . . . .
28 . . . .

## II. ANALYSIS

### A. Procedural Defects

#### 1. Plaintiff's Motion for Summary Judgment

At the outset, the Court is compelled to address deficiencies present in Plaintiff's Motion, each of which make it difficult for the Court, as well as Defendant, to analyze the remaining issues in the matter, and exhibit fundamental misunderstandings of the current applicable burdens.[1] First, Plaintiff appears to seek summary judgment on claims that have already been dismissed or were never pled. As the Court has previously clarified (Doc. 82), the Plaintiff's only remaining count is his Fourth Amendment claim. Nevertheless, Plaintiff's Motion makes continuing reference to allegations of conspiracy, surveillance, racial discrimination, and targeting, while also citing statutes not at issue in the operative pleading. Defendant is not required to further litigate those issues and the Court will leave them equally unaddressed, instead referring Plaintiff to its previous Orders. (*See* Docs. 50, 80, 82.)

Second, Plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c) and Rule 56.1(a) of the Local Rules of Civil Procedure in the filing of his Statements of Fact. (*See* Pl.'s MSJ at 6-9.[2]) Initially, Plaintiff filed multiple Statements of Fact (*see* Pl.'s MSJ at 6-7, 8-9), which themselves have separate "facts" sections (*see* Pl.'s MSJ at 7). And many of these facts are not set forth in separate and sequentially numbered paragraphs, and the vast majority of Plaintiff's factual assertions fail to cite to any portion

---

[1] For example, Plaintiff states that there were no bike lanes at the time of the incident and that a Tempe Street Engineer, Julian Drusang, "will confirm." (Pl.'s Resp. at 25.) However, the time for such confirmation is now—via affidavit, deposition testimony, or otherwise. LRCiv 56.1(a).

[2] Plaintiff's filings are largely conglomerated and filed as one ongoing document, rather than separate parts as required by Local Rule of Civil Procedure 56.1(a). While Plaintiff's filings contain hand-written page numbers on most pages, they are iterative, repetitive, and otherwise unaligned as required by Local Rule of Civil Procedure 7.1(b)(1). Accordingly, the Court refers to pages as identified in the electronic filing running header. Because Plaintiff's exhibit labeling is equally deficient, the Court will refer to all filings collectively as the name of the filed document as assigned by the Clerk of the Court, regardless of the internal and inconsistent titles, and only cite specifically to the electronic filing header.

of the record or admissible evidence, in violation of Federal and Local Rules. *See* LRCiv 56.1(a) (noting that "[e]ach material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support").

Third, Plaintiff failed to comply with Local Rule of Civil Procedure 56.1(f), which requires that he provide excerpts of documents relied on for evidentiary support. Instead, Plaintiff has submitted the entirety of Defendant's deposition transcript, multiple times (*see* Plaintiff's Controverting Statement of Facts ("PCSOF") at 4-18, 31-39), and relied on that submission, in whole, to support much of his Motion. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (the Court need not "scour the record in search of a genuine issue of [t]riable fact"); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be "unfair" to require the district court "to search the entire record" if a party fails to "disclose where in the record the evidence for [the factual claims] can be found").

Fourth, Plaintiff's memorandum of law filed in support of his Motion does not include any citation to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact relied upon as mandated by the Local Rules. *See id.*; LRCiv 56.1(e).

For these reasons alone, the Court could deny Plaintiff's Motion for Summary Judgment. *See, e.g.*, LRCiv 56.1(a) ("failure to submit a separate statement of facts in [the requisite form] may constitute grounds for denial of the motion"); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 WL 1622001, at *2 (D. Ariz. Apr. 25, 2016) (noting that *pro se* plaintiff's motion may be denied for failure to comply with Federal and Local Rules). However, given Plaintiff's *pro se* status, as well as the preference for deciding matters on their merits, the Court will grant Plaintiff leeway and attempt to ascertain the existence of a genuine issue of material fact based on all filings, including the deficient pleadings. Still, as the movant, Plaintiff bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). To the degree Plaintiff has failed to do so, those failures will be fatal to his Motion.

### 2. Defendant's Motion for Summary Judgment

As with Plaintiff's Motion, the Court must address the defects found in Plaintiff's Response. First, Plaintiff again violated Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1(e). "Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies . . . ." LRCiv 56.1(e). Plaintiff's Response contains no citation to any statement of fact, and scarce citation to the record.

Second, although Plaintiff's Separate Statement of Facts—which is not separately filed but rather contiguous with his Response and "facts" supportive of his Motion—contains several citations to the record—albeit in unconventional and often convoluted fashion—and several paragraphs fail to cite to any portion of admissible evidence or are otherwise offhandedly dismissive. (*See* Pl.'s Resp. at 20-29, ¶¶ 1-8, 1, 3-4, 6-7, 15-16, 26.[3])

Lastly, Plaintiff filed a personal affidavit in support of his Response that provides no citation to admissible portions of the record and is wholly self-serving. While the Court "may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature, . . . a self-serving declaration does not always create a genuine issue of material fact for summary judgment[.]" *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). "[W]hen the non-moving party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of fact." *Hansen v. United States*, 7 F.3d

---

[3] Plaintiff again improperly filed multiple documents, each purportedly serving as his statement of facts and featuring reset paragraph designations, which the Court will construe together.

- 6 -

137, 138 (9th Cir. 1993). Given that Plaintiff's claim is constitutional in nature and based almost solely on the accounts of Plaintiff and Defendant, the Court will consider Plaintiff's affidavit, despite its deficiencies. *But see Zolnierz v. Arpaio*, No. CV-11-146-PHX-GMS, 2012 WL 1432537, at *2 (D. Ariz. Apr. 25, 2012) (summary judgement may be granted when the non-moving party can produce only "uncorroborated and self-serving" statements that lack an evidentiary basis) (internal citation omitted).

In addition to the purely procedural defects in Plaintiff's Response, much of Plaintiff's short Response is spent lodging personal attacks on defense counsel and his credibility. (*See* Pl.'s Resp. at 2-4 ("Davis has changed, distorted and misrepresented my words in my deposition"; "hes' [sic] put the cops on me, hes' [sic] directed illegal surveillance on me, hes' [sic] lured me into this Court alleging that I don't live where I currently live . . . . Mr. Davis is despicable and an embarrassment"; "I prey [sic] this Court must not overlook the deceit and loathsomeness of Mr. Davis who is a disgusting excuse for an attorney"; "Mr. Davis has tried to get me to taint my testimony . . . . He is really a piece of work.").) Plaintiff frequently refers to counsel by name, questions his character, and addresses what he contends are attacks on his credibility or his claims. (Pl.'s Resp. at 2-4.) Indeed, the very title of Plaintiff's Response is an allegation against defense counsel, and none of the above is pertinent to the resolution of Defendant's Motion. The credibility of Defendant, Plaintiff, and each party's contentions is reserved for the ultimate fact-finder and not addressed at the summary judgment stage. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). The sole inquiry for the Court is whether a genuine issue of material fact exists as to any of Plaintiff's claims based on the operative Complaint, moving papers, and record before it. Further, the character of counsel is rarely at issue and, in any event, irrelevant to the resolution of this Motion for Summary Judgment.

Despite these deficiencies, as well as the lack of Reply from Defendant,[4] the Court is able to discern the existence of any genuine dispute of material fact given the limited nature of the factual allegations and remaining claims and will rule on Plaintiff's Motion accordingly.

### B. Cross-Motions for Summary Judgment

As stated, Plaintiff's only active claim is one alleging a Fourth Amendment violation. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons, within the meaning of this provision. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A law enforcement officer may stop a driver without violating the Fourth Amendment when the officer has probable cause to believe that a traffic violation has occurred. *See Whren v. United States*, 517 U.S. 806, 810 (1996); *Schnerber v. California*, 384 U.S. 757, 768 (1966) ("the Fourth Amendment's proper function is to constrain, not against all intrusions . . . but against intrusions which are not justified in the circumstances, or which are made in an improper manner"). While the "touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), the Supreme Court's decision in *Whren* does not require the Court to determine the reasonableness of a temporary detention if there is reasonable suspicion to conclude a traffic violation occurred. *Whren*, 517 U.S. at 818-19. While both parties seem to improperly interchange "reasonable suspicion" and "probable cause," because the higher standard is met, the Court will focus on probable cause. *See, e.g.*, *Navarette v. California*, 134 S.Ct 1681. 1687(2014) ("Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for

---

[4] The Court also notes that Defendant's filings—while procedurally sound—failed to provide any analogous case law or to meet Plaintiff's limited meritorious arguments with meaningful, precedent-based opposition.

probable cause.") (internal citations and quotations omitted); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ("While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.") (internal citations and quotations omitted); *United States v. Sokolow*, 490 U.S. 1 (1989) (holding that "reasonable suspicion" entails some minimal level of objective justification for making a stop, that is, something more than inchoate or unparticularized suspicion or "hunch," but less than level of suspicion required for probable cause).

Plaintiff contends that probable cause did not exist, as evidenced by the fact that Defendant allegedly waited for Plaintiff to park his car before turning around and effectuating a traffic stop—rather than immediately after the infraction. (PCSOF at 20-21.) Defendant responds that he had sufficient probable cause to justify any traffic stop because Plaintiff admittedly violated A.R.S. § 28-751(2), and that any alleged delay in making contact with Plaintiff—which Defendant contests—does not extinguish such probable cause. (Def.'s Resp. at 3-4.) The Court agrees with Defendant.

As Defendant notes, Plaintiff admits to making a wide left-hand turn such that he did not immediately continue in the left-most lane on University Drive, as required by A.R.S. § 28-751(2). (DSOF ¶¶ 13-16 (citing DSOF Ex. B, 57:7-9).) Thus, it is uncontroverted that Defendant witnessed Plaintiff commit some degree of a traffic infraction, giving him probable cause to effectuate a traffic stop. *See Whren*, 517 U.S. at 818-19. However, Plaintiff argues that because Defendant allegedly waited until Plaintiff parked and exited his car before stopping him, as opposed to pulling him over, the Court may intuit that the reason for Defendant's stop was not based on the traffic violation but Plaintiff's race, or some other nefarious motive. While the Court acknowledges a dispute of fact that cannot be resolved—precisely when and how the interaction between Plaintiff and Defendant began—that controverted fact is not material under Ninth Circuit precedent.

Plaintiff's argument is similar to that which the Ninth Circuit rejected in *United States v. Willis*, 431 F.3d 709 (9th Cir. 2005). There, in the context of a motion to suppress in a criminal matter, the defendant argued that even if he made a rapid turn as the officers alleged, thereby giving probable cause to effectuate a traffic stop, the officers' delay in arresting the defendant until he had parked and exited his car—as well as their failure to cite, charge, or even mention any traffic violation—negated any probable cause associated with the allegedly rapid turn. *Id.* at 716-17. Thus, the defendant argued, the officers violated the Fourth Amendment. *Id.* The court disagreed. Similar to *Whren*, where the Supreme Court found it reasonable under the Fourth Amendment to stop the petitioner where officers had probable cause to believe a traffic violation had been committed—even if the ultimate charge was not related to the traffic stop—the *Willis* court found the initial probable cause sustained any subsequent seizure. *Id.* The court stated that the "fact that [the defendant] had parked his car at the point that the officers detained him does not affect our analysis" as "any delay between [the defendant's] traffic violations and the officers' actions was insignificant" and the officers "detained [the defendant] as soon as they observed him pull over." *Id.* While the officers in *Willis* admitted to not immediately effectuating a traffic stop in order to further observe the defendant—unlike Defendant here—they did not mention traffic violations whatsoever in effectuating the arrest, nor was the defendant charged with any traffic infraction. *Id.* Here, Defendant ultimately cited Plaintiff for the traffic violation that Plaintiff admits to committing—albeit to a lesser degree and due to extenuating circumstances. Just as in *Willis*, the Court finds that "since [the officer] could have relied on the traffic violation as justification for stopping [the defendant], the stop was valid under *Whren*." *Id.* at 716.

Similar to Plaintiff's allegations of surveillance and other interactions with police, the defendant in *Willis* also argued that any seizure was invalid because officers had stopped him the previous week based on a missing persons report, thus exhibiting an ulterior motive unrelated to the traffic stop. *Id.* The court, however, found that "because

- 10 -

the officers had at least reasonable suspicion to stop [the defendant] for a traffic violation, the validity of any other reasons they may have had to stop him becomes irrelevant." *Id.* at 726, n.7. Here, Plaintiff's allegations of surveillance, profiling, and pervasive and historic harassment—much of which were not pled or have been dismissed—are equally irrelevant to the evaluation of Defendant's actions. Plaintiff's argument that the real reason he was stopped by police was his race—as allegedly evidenced by the delay in approaching him until he was visible outside of his vehicle, as well as unsubstantiated claims of previous harassment—is equally irrelevant. Under *Whren*, the Court cannot second-guess the reasons for an officer's stop. *Whren*, 517 U.S. at 813. ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Again, no disagreement exists as to whether Plaintiff committed a traffic violation. The Court will therefore not invade the officer's alleged state of mind, as sufficient probable cause existed under controlling precedent. Accordingly, each of Plaintiff's claims as to disputed facts are extinguished by controlling, on-point precedent, and the Court must deny Plaintiff's Motion and grant Defendant's.

## IV.  CONCLUSION

The only facts genuinely in dispute—whether Defendant initiated contact with Plaintiff while in transit by commencing a traffic stop or by approaching him after he had parked and exited his car, and what such a delay might imply—are not material ones, as they could not affect the outcome of the case under controlling precedent. *See, e.g., Guardian News & Media LLC v. Ryan*, No. CV-14-02363-PHX-GMS, 2016 WL 7385036, at *2 (D. Ariz. Dec. 21, 2016) ("Substantive law determines which facts are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'") (citing *Anderson*, 477 U.S. at 248). While Plaintiff argues that such evidence speaks to the

reason for seizing him, averring possible racial profiling, it is not for the Court to second-guess Defendant's motives. *Whren*, 517 U.S. at 813. It is uncontroverted that some degree of traffic infraction occurred, giving Defendant ample probable cause to question and cite Plaintiff. Any delay in initiating that process is immaterial to the Court's analysis of Plaintiff's Fourth Amendment claim, *Willis*, 431 F.3d at 716-17, the only claim remaining.

**IT IS THEREFORE ORDERED** granting Defendant Officer Luke Trader's Motion for Summary Judgment (Doc. 174).

**IT IS FURTHER ORDERED** denying Plaintiff Prentice Williams's Motion for Summary Judgment (Doc. 177).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 10th day of May, 2017.

Honorable John J. Tuchi
United States District Judge